**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

VINCENT COATES,

                Plaintiff,

v.

D. CASTILLA *et al*.,

                Defendants.

Case No. 2:20-cv-11101-GAD-JJCG
District Judge Gershwin A. Drain
Magistrate Judge Jonathan J.C. Grey

_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Vincent Coates brings this complaint under 42 U.S.C. § 1983 against Daniel Castilla, Teresa Kik, Marguerite Howard, and Katherine Garduno-Klynstra for violation of his First Amendment rights.[1] (ECF No. 1.) He also alleges that the defendants were involved in a civil conspiracy to deprive him of his rights in violation of 42 U.S.C. §§ 1985 and 1986. *Id.* This matter is before the Court on Castilla's motion for summary judgment (ECF No. 21) and Garduno-Klynstra's motion for summary judgment (ECF No. 22).

_____

[1] As discussed below, on January 25, 2021, Judge Gershwin A. Drain dismissed Coates' Eighth Amendment claim against Castilla. (ECF No. 8.)

On December 3, 2021, Judge Drain referred pretrial matters to the undersigned. (ECF No. 23.) For the following reasons, the undersigned **RECOMMENDS** that Castilla's motion for summary judgment (ECF No. 21) and Garduno-Klynstra's motion for summary judgment (ECF No. 22) be **GRANTED**.

## I.   Background

### A. Coates' Complaint and MDOC Grievances

Coates is an incarcerated person in custody of the Michigan Department of Corrections (MDOC) challenging the conditions of his confinement at the G. Robert Cotton Correctional Facility. (ECF No. 1.) He alleged that Castilla, Kik, Howard, and/or Garduno-Klynstra violated his First Amendment rights by retaliating against him after he filed a grievance against Castilla. *Id.* Coates alleged that all defendants conspired to do so. *Id.* Additionally, he alleged that Castilla violated his Eighth Amendment rights. *Id.*

Clark's Eighth Amendment claim stems from an incident with Castilla, a corrections officer. Clark alleges that Castilla searched Coates' personal items and threw them on the floor on August 1, 2017. (ECF No. 1, PAGEID.11.) Coates further alleges that Castilla strip-searched Coates and made verbally abusive comments. (*Id.* at PAGEID.11–12.) Castilla allegedly warned that he would arrange for Coates' transfer to another housing unit if he complained to anyone about the incident. (*Id.* at PAGEID.13.) On August 1, 2017, Coates filed an

2

emergency grievance under the Prison Rape Elimination Act ("PREA") regarding Castilla's conduct. *Id.*

At the time of the incident with Castilla, Coates received a special accommodation mandating that he only be assigned to a light-duty work detail because of his arthritis. (*Id.* at 14.) On August 22, 2017, assistant resident unit supervisor Kik spoke to Coates, inquiring about his medical detail because Coates had been seen lifting weights in the weight room. *Id.* Coates responded that his weightlifting was not inconsistent with his accommodation. *Id.* Kik called Castilla into her office to join her and Coates, where Castilla stated that Coates had accused him of sexual harassment and bullying. *Id..* Castilla also allegedly said to Kik, "I'd appreciate it if you'd get him out of here." *Id.* Kik then dismissed Castilla from the room and allegedly told Coates that she has known Castilla for years and would try to get Coates transferred. (*Id.* at PAGEID.15.) Coates further asserts that Kik and Howard exchanged emails about whether Coates was medically clear for transfer. *Id.*

On that same date, Garduno-Klynstra, a nurse practitioner, rescinded Coates' light-duty accommodation and issued a new special accommodation order. (*Id.* at PAGEID.16.) The new accommodation stated that Coates could not work on yard crew. *Id.* On August 31, 2017, Coates was transferred from G. Robert Cotton Correctional Facility to a different facility. (*Id.* at PAGEID.17.)

3

On January 25, 2021, Judge Drain dismissed Coates' Eighth Amendment claim against Castilla. (ECF No. 8.) The First Amendment and conspiracy claims against Castilla, Kik, Howard, and Garduno-Klynstra remain. According to MDOC records, Coates pursued four grievances arising out of G. Robert Cotton Correctional Facility through Step III of the MDOC grievance process: (1) deliberate indifference to serious medical needs for changing his special diet (ECF No. 21-3, PAGEID.135–139) (Grievance No. JCF-20-01-0126-28e, or "Grievance 0126"), (2) removal of special accommodation for light-duty work in retaliation of his PREA grievance (ECF No. 21-3, PAGEID.140–144) (Grievance No. JCF-18-01-0032-28e, or "Grievance 0032"), (3) refusal to investigate his PREA grievance (ECF No. 21-3, PAGEID.145–152) (Grievance No. JCF-17-08-2063-28E, or "Grievance 2063"), and (4) facility transfer in retaliation for his PREA grievance (ECF No. 21-3, PAGEID.153–158) (Grievance No. JCF-17-12-2901-24Z, or "Grievance 2901").

On November 8, 2021, Castilla moved for summary judgment based on Coates' failure to exhaust administrative remedies. (ECF No. 21.) On December 7, 2021, Coates responded. (ECF No. 24.) On December 20, 2021, Castilla replied. (ECF No. 27.)

On December 3, 2021, Garduno-Klynstra moved for summary judgment based on Coates' failure to exhaust administrative remedies. (ECF No. 22.) On January 3, 2022, Coates filed an untimely response to the motion. (ECF No. 30.)

**B. MDOC Grievance Process**

MDOC provides a three-step grievance process that prisoners must follow to exhaust administrative remedies. MDOC Policy Directive 03.02.130 (effective Mar. 18, 2019). Per MDOC policy, grievants must include the "[d]ates, times, places, and names of all those involved in the issue being grieved." *Id.* ¶ S.  Prior to Step I, a grievant must "attempt to resolve the issue with the staff member involved within two business days." *Id.* ¶ Q. If there is no resolution, the grievant may file a Step I grievance within five business days. *Id.* At Step II, a grievant may appeal the denial of a Step I grievance within ten business days after receipt of the Step I response. *Id.* ¶ DD. At Step III, a grievant may appeal the Step II denial within ten business days after receipt of the Step II response. *Id.* ¶ HH. Grievances at all steps are logged in a computerized tracking system. MDOC Policy Directive. *Id.* ¶¶ X, EE, II.

## II.    Standard of Review

Under Federal Rule of Civil Procedure 56(a), courts must grant motions for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Moreover, a fact is material "only if its resolution will affect the outcome of the lawsuit." *Id.* at 451–52 (citing *Anderson*, 477 U.S. at 248).

In reviewing a summary judgment motion, the Court must draw all justifiable inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). The burden of demonstrating the absence of a genuine dispute of material fact initially rests with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party bears this responsibility by identifying portions of the record that show the absence of a genuine issue as to any material fact. *Id.* If the moving party meets its burden, the burden then shifts to the nonmoving party to establish "specific facts showing that there is a genuine issue for trial." *Id.* at 324. If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," the moving party is then entitled to summary judgment. *Id.* at 322.

### III.    Analysis

The Prison Litigation Reform Act (PLRA) requires prisoners to exhaust all available administrative remedies before filing an action about prison conditions. 42 U.S.C. § 1997e(a). The Supreme Court requires that a grievant exhaust all administrative remedies before filing a lawsuit. *Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). It is also "the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* at 218. Proper exhaustion entails "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (emphasis in original) (citation and internal quotations omitted).

Failure to exhaust is an affirmative defense, so prisoners are "not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. The burden thus rests on defendants to establish failure to exhaust. *Napier v. Laurel Cty., Ky.*, 636 F.3d 218, 225 (6th Cir. 2011). Once the defense of failure to exhaust is raised, the grievant must "present 'significant probative evidence' to defeat the motion for summary judgment." *Id.*

## A. Claims Against Castilla

Castilla argues that Coates did not exhaust his administrative remedies before filing his complaint. (ECF No. 21.) Specifically, Castilla contends that only one of the four exhausted grievances is relevant to the action, Grievance 2901, and that this grievance does not allege Castilla's involvement. *Id.* Grievance 2901 pertains to Kik and Howard's transfer of Coates in retaliation of his PREA grievance. (ECF No. 21-3, PAGEID.153–158.) Castilla states that Grievance 2901 mentions Castilla solely to identify him as the subject of the PREA grievance and accuse Kik and Howard—not Castilla— of retaliatory conduct. (ECF No. 21.) In response, Coates asserts that he did exhaust his claim against Castilla and that "the fact that [he] did not discuss in full detail the basis of his retaliation claim against [Castilla] in his grievance, does not preclude his claim from being exhausted." (ECF No. 24, PAGEID.218.) In his reply, Castilla maintains that a reasonable reading of Grievance 2901 is that Coates' grievance was only against Kik and Howard. (ECF No. 27.)

Here, Coates was required to undertake all steps of the MDOC process to fully exhaust his grievances. Castilla, who bears the burden of proof, provided Coates' Step III grievance report. (ECF No. 21-3.) According to the report, none of the four claims that Coates pursued through Step III are against Castilla. *Id.*

8

First, in his Step I grievance regarding the diet change, Coates writes that "[t]his grievance is written against Pamela L. Sanders [PS1]RD and the dietary committee." (*Id.* at PAGEID.138.) Second, his Step I grievance regarding the special accommodation change, Coates accused Garduno-Klynstra of removing his accommodation in conspiracy with Howard and Kik. (*Id.* at PAGEID.143.) Third, in his Step I grievance regarding the refusal to investigate his PREA complaint against Castilla, Coates wrote, "This grievance is against JCF Deputy Warden Smith, and JCF Warden Stewart." (*Id.* at PAGEID.148.) Finally, in Grievance 2901, Coates accuses Kik and Howard of misconduct, stating that Kik "took these actions because of Grievant's protected conduct in filing a PREA Grievance against Castilla." (*Id.* at PAGEID.156.)

The MDOC grievance process requires grievants to include the the "[d]ates, times, places, and names of all those involved in the issue being grieved." MDOC Policy Directive 03.02.130 ¶ R (effective Mar. 18, 2019). The Court finds that Coates did not do so with respect to Castilla. Aside from the individuals he identified in his Step I grievances, Coates makes vague allegations against unnamed individuals in his post-Step I appeals. In his Step II appeal regarding the diet change, Coates mentions that the diet change is a "retaliatory move designed to assist certain staff, who conspired to transfer me after we had a disagreement." (ECF No. 21-3, PAGEID.136.) In his Step II appeal regarding the special

9

accommodation change, Coates states that "[Garduno]-Klynstra conspired with said staffs," and in his corresponding Step III appeal, Coates wrote that, "[Garduno]-Klynstra did in [fact] conspire with said other prison officials." (*Id.* at PAGEID.141.) In his Step II appeal regarding the refusal to investigate his PREA grievance, Coates alleged that "certain staffs . . . were corruptly impeding the process." (*Id.* at PAGEID.146.)

None of these allegations name Castilla. Coates thus did not comply with MDOC policy, and these grievances cannot satisfy the PLRA's exhaustion requirement. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules.")

Moreover, a plaintiff fails to exhaust administrative remedies against a defendant if the plaintiff does not name the defendant at Step I of the grievance. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (stating that there is no exhaustion where an inmate fails to name individuals in his Step I grievance)[2]; *see also Burley v. Michigan Dep't of Corr.*, No. 16-CV-10712, 2016 WL 11259277, at \*7 (E.D. Mich. Nov. 30, 2016), report and recommendation adopted, No. 16-CV-10712, 2017 WL 877219 (E.D. Mich. Mar. 6, 2017) ("By naming [the defendant]

---

[2] *Reed-Bey* also held that there is proper exhaustion when prison officials decline to enforce their procedural requirements and "consider otherwise-defaulted claims on the merits." *Id.* at 325. Here, however, MDOC considered Coates' claims on the merits solely with respect to the named individuals, Howard and Kik. (ECF No. 21-3, PAGEID.153–158.)

at only step II of the grievance process, and failing to name [the defendant] at step I, [the plaintiff] has failed to properly exhaust this claim against [the defendant.]"). Because Coates did not name Castilla at Step I of any grievance, Coates failed to properly exhaust his administrative remedies as to Castilla.

Coates' argument that he properly exhausted his claims against Castilla also fails because the PREA grievance did not include allegations of retaliation or conspiracy—the only remaining claims against Castilla. (ECF No. 24, PAGEID.224.) The PREA grievance pertained to the August 1, 2017 incident with Castilla (ECF No. 24, PAGEID.224), and Judge Drain dismissed Coates' claims regarding this incident. (ECF No. 8.)

Castilla is therefore entitled to summary judgment for lack of proper exhaustion.

**B. Claims Against Garduno-Klynstra**

Garduno-Klynstra also argues that Coates did not exhaust his administrative remedies before filing his complaint. (ECF No. 22.) She contends that only Grievance 0032 is relevant to her regarding the alleged removal of Coates' special accommodation. *Id.* First, Garduno-Klynstra asserts that Coates failed to exhaust his remedies because MDOC rejected Coates' Step III appeal due to untimeliness. *Id.* In its Step III grievance response, MDOC states that it rejected Coates' Step III appeal because the deadline was February 24, 2018, and MDOC did not receive it

11

until March 13, 2018. (ECF No. 22-1.) Garduno-Klynstra further argues that Coates listed the wrong date of the removal of special accommodations and that Coates thus did not allege anything against Garduno-Klynstra on the correct date. *Id.*

Since Coates filed an untimely response to Garduno-Klynstra's motion (ECF No. 30), the Court need not examine his response on the merits. Even considering the merits, the Court finds that Coates' arguments are unsupported by the law. Coates argues that MDOC addressed the merits of his grievance at all three steps and that he has no control over the speed of mail delivery. (ECF No. 22.) As discussed below, there is no exhaustion where MDOC rejects a grievant's response for untimeliness. *Cook v. Caruso*, 531 F. App'x. 554, 563 (6th Cir. 2013). MDOC policy also explicitly states that grievances are considered filed on the date received by MDOC. MDOC Policy Directive 03.02.130 ¶ T (effective Mar. 18, 2019).

Here, Coates was required to undertake all steps of the MDOC process to fully exhaust his grievances. Garduno-Klynstra, who bears the burden of proof, provided Coates' Step III grievance report. (ECF No. 22-1.) According to the report, the grievance against Garduno-Klynstra that Coates pursued through Step III was untimely. *Id.*

If MDOC rejects a grievant's response for untimeliness, the grievant did not properly exhaust their claims in accordance with the prison's grievance procedure. *Cook*, 531 F. App'x. at 563 (stating that a grievant must receive "merits-based responses at *each step*" of MDOC's grievance procedure for proper exhaustion). Since Coates' grievance against Garduno-Klynstra was untimely, he failed to properly exhaust his administrative remedies against her. Garduno-Klynstra is therefore entitled to summary judgment for lack of proper exhaustion.

## IV. Conclusion

For the reasons above, the undersigned **RECOMMENDS** that Castilla's motion for summary judgment (ECF No. 21) and Garduno-Klynstra's motion for summary judgment (ECF No. 22) be **GRANTED**.

Dated: January 20, 2022        s/**Jonathan J.C. Grey**
                                    Jonathan J.C. Grey
                                    United States Magistrate Judge

## Notice to the Parties About Objections

Within 14 days of being served with a copy of this Report and Recommendation, any party may object to and seek review of the proposed findings and recommendations set forth above. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). If a party fails to timely file specific objections, any further right of appeal is waived. *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Only specific objections to this Report and Recommendation are preserved for appeal; all other objections are waived. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). Each objection must be labeled as "Objection No. 1," "Objection No. 2," etc. Each objection must specify precisely the provision of this Report and Recommendation to which it pertains. In accordance with Local Rule 72.1(d), copies of objections must be served on this Magistrate Judge.

A party may respond to another party's objections within 14 days after service of any objections. Fed. R. Civ. P. 72(b)(2). Any such response should be concise and address each issue raised in the objections in the same order and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## Certificate of Service

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 20, 2022.

<u>s/ **S. Osorio**</u>
Sandra Osorio
Case Manager